May it please the court. My name is Ryan Ray and along with Brant Phillips I represent the appellant Excalibur International Ltd LLC and I would respectfully request to reserve three minutes of my time for rebuttal. The district court erred in determining that the Younger abstention doctrine applies to this case and it should therefore be reversed. In Sprint Communications v. Jacobs, the United States Supreme Court made clear that Younger can only apply when the pending state proceedings are criminal or quasi-criminal in nature. The state administrative proceeding here which Excalibur initiated to challenge executive action that would disqualify it from conducting business in the state of Tennessee based on is not quasi-criminal. The state did not initiate the proceedings with anything analogous to a criminal charge and there was no formal investigation that's like a criminal investigation. So because the state proceedings were not akin to a criminal prosecution in important respects, the district court erred. Do you understand the state to be arguing that the not paying the judgment is and the results of that, the failure to pay the judgment is the thing that's akin to a criminal action? What do you understand the state's position to be as to what is the analogy to a criminal action? Your Honor, I believe they are contending and I believe the district court accepted that the proceedings that Excalibur initiated and that again, Your Honor, is the only currently pending proceeding is the proceedings that were initiated by Excalibur and which only could have been initiated by Excalibur to challenge this executive decision that those are what is quasi-criminal and respectfully, Your Honor, that is what we would contend that there is no such thing, it's not closely related to a criminal prosecution, certainly not in important respects and therefore to apply younger was therefore error. Don't we have to ask, I think the wrongful act is what's at issue, right? That is one of the things, Your Honor, that the U.S. Supreme Court in Sprint said we look at to determine is this a certain civil enforcement actions, right? They identified three things, there's only one of them that's at issue. There's certainly not a criminal prosecution and we're not trying to shut the judiciary down so it is a certain civil enforcement action and the Supreme Court cited Huffman there, Your Honor, and Huffman, they said it was the path marking decision. That was an action in which the state prosecuting authority was trying to shut down a movie theater for displaying obscene films, right? And there was a criminal statute that said displaying obscenity was a crime. There was another that that could also have been invoked under the public nuisance laws which was done there and so the court said that is akin to a criminal prosecution. It was in aid of and closely related to the criminal statutes and so when we're asking that, the Supreme Court said there's several things we look at and whether it is being initiated to sanction the plaintiff for a wrongful act, that is one of the factors that the Supreme Court identified. The question becomes what is the wrongful act here? Is the wrongful act about the existence of this fund? Is the wrongful act the failure of Excalibur to pay? How do we define down? I would submit, Your Honor, that it has to be the failure to pay the judgment because we have to look at where we got to where we are which is my client. So you specifically, don't those cases address the general wrong, the purpose of the existence of this escrow fund? Isn't the wrongful act the failure in general to make payments into the escrow fund that is created for the purpose of health and safety of the citizens of Tennessee? Your Honor, my client has made all of its escrow payments. What's at issue is this judgment that was rendered against the Brazilian company long ago. When we look at the wrongful act, I think we have to focus on the examples that the United States Supreme Court gave. Again, they had the Huffman with the obscenity laws. There was Moore v. Sims was a violation of child abuse. In the state proceedings, the Department of Human Services was trying to remove a child because the child had been abused by its parents. They cited the Traynor v. Hernandez case was a welfare fraud case. All of these examples that the U.S. Supreme Court cited, while they may not have been criminal prosecutions, they were closely related to a criminal prosecution. And indeed, in the Traynor case that the Supreme Court cited, they noted that the state authorities had the option of enforcing these proceedings under the criminal laws. And that simply is not the case here. The state contends in its brief that the wrongful act was Excalibur's voluntary decision to acquire and manufacture a cigarette brand family that's noncompliant with Tennessee law and for which the state of Tennessee has unsatisfied judgments. First of all, where is that prohibited at all? The act of acquisition, where does it, where can we go and say you cannot purchase? Your client is a successor in interest to these earlier institutions. They only purchased assets. They did not actually acquire those entities. They purchased assets not from the company that had the unsatisfied judgment. And that's an important part of our underlying constitutional challenges. They purchased some but not all assets from another entity that actually was allowed to operate for a number of years without having this kind of demand being made. But when we look at the wrongful act, it is, there is no criminal statute in the state of Tennessee that comes close to applying to this kind of situation. Well the, you used the term not closely related to a criminal prosecution. I think the, actually the language that's in the cases says akin to a criminal prosecution and when you take somebody, when you get a judgment against someone for this amount of money, it certainly looks like it's akin to a fine, for example. And I would say, Your Honor, that yes, can in important respects, that's the language from the Supreme Court and closely related to actually came from Huffman as well. But there must be something in the criminal law that would apply to a situation like this. And we would contend, Judge, that simply because a judgment is large does not mean by itself that it is a quasi-criminal proceeding challenging that. That the underlying conduct and the wrongful act at issue wasn't something that could have been prosecuted under the criminal laws. Well, I guess I'm looking at the Dayton Christian School case, which is underlying wrong is to the press. Do you not see the issue before us as akin to that type of wrong? I would say, Your Honor, that in those cases, in Sprint when the Supreme Court talked about those, they talked about those cases when they were talking about an investigation being involved. In the Supreme Court, I think Justice Brennan in particular recognized that these bar disciplinary proceedings very much look like a criminal prosecution in a lot of ways because the attorney is being... Something's at stake, for sure, in all of them, but not necessarily criminal sanctions. Isn't that correct in the pregnancy discrimination and in the attorney's statements to the press? I would say, Your Honor, that the Supreme Court recognized that those proceedings are related to... They look a lot more like a criminal prosecution than what we have here because you had a state administrative agency doing this investigation like a criminal investigation. We're interviewing people, we're talking to people, we're building this factual record, and then we are specifically charging you with a violation of the rules of professional conduct or this other provision of state law. That's just not what happened here, Your Honor. There wasn't an underlying investigation. There was, in fact, a statute where the Department of Revenue under the tobacco enforcement laws could have commenced an investigation. They didn't use that. They used another statutory provision that allowed them to request information. They requested information. They claim that's the initiation, right? They claim that... That they initiated it with the letter and the investigation. That's their position. Why is that at all? That is because that's not a proceeding, Your Honor. That is not... They informed us that the Commissioner of Revenue had made the decision to delist us. That's not a proceeding. Where was that proceeding pending? Before whom was it pending? That was an announcement of executive action. That was not an adversarial proceeding. There was no adversarial proceeding until Excalibur invoked the APA. Only Excalibur could have invoked the APA. That was the proceeding that is at issue. It is not state initiated. It wasn't the result of an investigation. And it is just not characterized by something that could have been criminal, that could have been in aid of criminal statutes or could have been prosecuted under criminal statutes. And so it is not the kind of proceeding to which the Younger Doctrine can apply. Do you think the decision by the Tennessee Court of Appeals that said the Chancery Court has jurisdiction to consider your discovery disputes resolves some of your arguments? My time has elapsed. I would say no, Your Honor. As it relates to Younger, there is a threshold issue of quasi-criminal before we get to those factors. Under Middlesex, if we look at whether we have a full and fair opportunity, which we say we do not, the Tennessee Court of Appeals decision merely said the Chancery Court erred in saying it didn't have jurisdiction. It didn't have jurisdiction to take up the discovery that you wanted in order to provide evidence for your constitutional claim. Correct. But we still are faced, Your Honor, under the actual facts as they've developed with an administrative law judge saying those legal issues are simply not at play here so we can't get into discovery about how other parties have been treated. Now the Chancery Court can say no, you're wrong. But the Chancery Court here, in fact, said just the opposite. That I have looked at this. It was reversed on the jurisdictional issue, not on the merits. The only state officers, judicial or quasi-judicial, that have actually considered the merits have said no, you don't get into this. So in those facts, we submit we do not have a full and fair opportunity to litigate these issues. Thank you.  May it please the Court, my name is Steve Butler. I'm here representing the defendants in their official capacities for the state of Tennessee. The District Court correctly held that Younger abstention applies in this case. According to the Supreme Court case of Huffman v. Pursue, as a threshold matter, the Younger abstention doctrine applies to a civil enforcement action if, in important respects, the state proceeding is more akin to a criminal prosecution than are most civil cases. The District Court properly concluded that this is such a case. Let me ask you, I just want to be sure I understand, the state will not allow Excalibur to sell cigarettes in Tennessee, correct, because it took them off the directory and the reason for that was their refusal to pay the judgment for a third party, which the state claimed owed a considerable amount of money, under these statutes. Is that essentially the way it happened? Well, Your Honor, I would focus differently than that precise... Is that wrong? In a sense. In a sense. Let me explain. Well, first of all, Excalibur has not been removed from the directory. They are currently on the directory. Again, Excalibur what? Excalibur is currently on the directory. That's one... Is that because they made a deposit? That's because of the agreed order. Also, we haven't gotten to the merits of the administrative case and so, pursuant to the agreed order, they're still on the directory until that happens. So, that's just a technical point. But they were... The department is attempting to remove Excalibur from the directory because of a statute and the statute says that the current manufacturer of a non-compliant brand family, which the Berkeley brand family is extremely non-compliant in Tennessee, the current manufacturer cannot be on the directory. And so, the department sent a letter to Excalibur... The Berkeley cigarettes in Tennessee? Not this time, Your Honor. But the statute doesn't limit it to that. The statute says the manufacturer cannot be on the directory if it is manufacturing a non-compliant brand family in Tennessee. Well, you claim they're doing that? Yes. Yes. They are the manufacturer of the Berkeley cigarettes. They admit that they're the manufacturer of the Berkeley cigarettes. They bought the right to manufacture Berkeley cigarettes from someone else, right? Yes. But they're not selling any Berkeley cigarettes, correct? Well, not in Tennessee. That is correct. Although, they are selling other cigarettes in Tennessee, Echo and Edgefield cigarettes. Those are being sold in Tennessee, currently. And you say that they shouldn't be able to sell those either? Correct. That is because they chose to become the manufacturer, the current manufacturer of a brand family that is non-compliant. They do have an option... Why wasn't Tantus, who also chose to own the brand family, why isn't Tantus across the table from you? Well, in fact, this is a point that I'm happy to address. In fact, the state did remove Tantus from the directory. In 2013, the Department of Revenue removed Tantus from the directory, in part for this exact same reason we're here today, with Excalibur. But they remained on the directory for some portion of time without having to pay Pseudomax's fine? That is correct, Your Honor. How were they allowed to remain on the directory and Excalibur is not? Well, as I said, the department ultimately did apply the statute against Tantus. There was a period of time, because the timing is somewhat confusing because of the judgments weren't obtained, even though the case against Pseudomax was filed in 2005, the judgments weren't obtained until 2010. But in any event, it is true that Tantus, I believe erroneously, was allowed to remain on the directory for a few years. Three years, wasn't it? You got your judgment in 2010 and Tantus was ultimately removed in 2013. That is correct. But at that time... Apparently for unrelated misconduct, is that correct? There were multiple reasons that Tantus was removed. One of the reasons was criminal indictments and we ask questions about the criminal indictments. You know where my concern lies. We have someone who was here actually using the Berkeley brand and allowed to remain on the directory until other misconduct occurred and then they were removed and I have not heard from you about your pursuit of this amount due from Tantus and yet now we are down the road further and it seems like it is a different enforcement procedure against Excalibur. Can you explain why? Well, I suppose it was oversight with Tantus for a period of time. But we did ultimately apply the statute and that is the key point. They keep saying that we never applied it. We did. The Department of Revenue did remove Tantus from the directory in part based on the same statute. But you didn't also go against them for the amount that Pseudomax hadn't paid? We gave them the same option that Excalibur has on that point, which is they could satisfy the... You pay up and you get to be on the directory. Exactly. The amount to be paid is $10 million or thereabouts? Well, it keeps going up because of post-judgment interest. But... Ripple damages and so on? You have the escrow deposits, which are not paid to the State of Tennessee. Those are deposited into a qualified escrow fund and then you also have civil penalties and then you have... There is a small amount of attorney's fees and then you have post-judgment interest on the civil penalties and attorney's fees and that continues to grow. One of my problems with your case is I can't figure out what is... that the State is doing is akin to a criminal proceeding here. I mean, you're trying to collect a debt, it looks like to me, primarily. Well, I don't think we're trying to collect a debt. I mean, Excalibur has that option. If they'd pay up, then they'd be okay, right? That is correct. But that's not... But that's not... That's not trying to collect a debt? No, Your Honor, what we're trying to do is remove Excalibur from the directory based on the statute. Now, they have the option of paying that. They certainly do have that option, but that is not what the State is doing. What the State is doing in this case is attempting to remove Excalibur from the directory based on the Tennessee directory statute. And if they... The money that they've set aside, there was some argument in the briefing that that payment would not even accrue to Excalibur's account in escrow, that it would be applied to Pseudomax's account. Is that correct? According to the... According to the... That's partially correct. According to the judgment, the money should be deposited into a Pseudomax escrow account. That's what the judgment says. The judgment requires that, but... Well, did it not require it at the time that Pseudomax was the owner of Berkeley Cigarettes? Yes. And isn't that the connecting component, that it would go into their account if they retained ownership and ability to sell Berkeley Cigarettes, but that's not the case now. But it's your position that any money that they paid does not get credited to their own account? That is correct, Your Honor. And it's also Excalibur's position. If the court looks at... Well, perhaps it's Excalibur's complaint. Well, no. I mean, Excalibur agreed to that. That's one of the points I'd like to make here, is that if the court looks at paragraph three of the agreed order, the parties agreed that the money would go into the Pseudomax escrow account. That was an agreement. And now Excalibur's complaining about it, but at the time, they agreed to that. That's in the record. Then they'd have to put into their own account in order to be an ongoing manufacturer. Is that correct? Well, for sales of their cigarettes in Tennessee, they would have to continue to pay into their own account. But that would be for future sales. Right. But the point is Excalibur agreed that it would go into the Pseudomax account, and another point on that is that Excalibur says that after 25 years, the money would go back to Pseudomax. That is not true. The TANTAS has an assignment of the reversionary rights to the Pseudomax escrow account. The issue is it won't go back to them. It won't go back to them. It's Excalibur. That is correct. And Excalibur agreed to that. So if TANTAS has this ability at some point to receive any monies that are paid in, why is this action not against TANTAS? Well, because TANTAS is not on Tennessee's directory. TANTAS was removed from Tennessee's directory in 2013. Again, this is not a collection effort. We are removing a tobacco product manufacturer from the directory that allows a cigarette manufacturer to sell cigarettes in Tennessee. So TANTAS can't be a party to this because TANTAS is not on Tennessee's directory. They haven't been on Tennessee's directory for the past five years. So once you're removed from the directory, then your position would be if Excalibur remains off the directory in the state of Tennessee, they don't owe you anything because you're not coming after them. That is correct. That is correct and that is one of the reasons why this is not a collection effort. So let me ask this. Let's suppose that Excalibur, having agreed to pay this in, pays the money in. After 25 years, it goes to TANTAS. Could Excalibur bring a private action against TANTAS to get that money back? Or is it just gone? I honestly have not thought about that. I think that would be between TANTAS and Excalibur. Well, of course. But that's my question. Would there be some way to untest enrichment? I don't know, Your Honor. I wish I could answer that question. I hadn't thought about that. I wasn't trying to trap you. I just wondered if there was some sort of way that all of this could be fairly apportioned after a period of time. Well, again, I will emphasize that Excalibur agreed to paragraph 3 of the Greed Order. Was the purpose of that to allow it to remain on the directory during the process of this litigation? Yes. That is correct. And if there is a resolution to this litigation, is there something in the creation of the escrow agreement that would require that that money go back to either SUDAMAX or TANTAS? Or is that a negotiable item? Well, as far as settlement negotiations, that would be – I assume that would be negotiable. I'm not 100 percent certain that – I mean, I'm somewhat at a disadvantage here talking about settlement because in order for the state to settle, we have to get approvals from numerous people. I understand that. I'm just trying to understand the lay of the land because from a fairness standpoint, it is concerning that this is the way the enforcement of this debt works. It creates a situation in which the wrongdoer is not the one that bears the responsibility or the burden for it. I understand your argument that this is about the directory. And I can also assure the Court that SUDAMAX will never be on Tennessee's directory again unless they satisfy this judgment in full. So the idea that SUDAMAX is getting away, I would not agree with that. They are not on Tennessee's directory and we would certainly do everything we can to stop them. Once someone is removed, there is no effort to go after that entity for the judgment against them? Oh, there certainly can be, yes. And has there been? Yes, we did – we sent a letter to SUDAMAX demanding the money once we got the judgment. The problem is SUDAMAX is located or was located in Brazil and I can't remember all the details but we did research a collection of judgments in Brazil and it simply was not feasible to go to Brazil and actually accomplish that, unfortunately. It would have made a great trip. Well, I missed out on that unfortunately. Do they sell cigarettes anywhere else in the United States? I'm sorry? Are they found – do they sell cigarettes anywhere else in the United States? SUDAMAX? Yes. I don't think so. No, I think I would know about that and I'm pretty sure they don't. So do you know whether when Excalibur took over Tantus, they knew about this judgment and realized that they might be held up for it? Yes, they did know about it. When we sent the information request investigating the facts, they responded to it and they responded by saying, guess what, you can't apply this statute that we think you're going to apply. So they were well aware of the fact that the judgments were an issue and that the statute the department is applying in this case is an issue. And certainly just to address the fairness question, I can certainly understand that but I think that's an argument for a different day. I think this is an argument about younger abstention and I'm not sure exactly how that fits into the analysis of younger abstention. Help me on one of the younger categories from Sprint. The investigations under Sprint's benchmarks usually culminate in the filing of a formal complaint or charges is the generic language that they use. And you don't spend much time about the investigation. What did the Tennessee Department of Revenue do to investigate this matter? The state of Tennessee sent a letter to Excalibur asking a series of questions, I believe there were 20 of them. And Excalibur responded to those. Now it's true that that may sound like a limited investigation but once we got the answers to those questions, we had all the information we needed to apply the statute. And so if there had been further investigation needed, we would have proceeded with it. But once we got the responses to those questions, we knew exactly that the statute applied. But then something mucked up the discovery. The discovery by Excalibur, is that correct? Isn't that what the argument in the Chancery Court was about? Yes, and I'm out of time so I'll respond. Yeah, that's all you can answer. Your Honor, I wouldn't say the discovery was mucked up. There are discovery disputes. And the discovery disputes ultimately will be resolved. Let me ask you this about the merits. If we find that the district court wrongfully invoked younger abstention, the case will proceed on the merits in district court? Is that correct? Well, it would proceed that the state, the defendants in this case, filed a motion to dismiss based on multiple grounds. I assume that the district court would rule on the other grounds. Okay. And if we do apply younger abstention, the case on the merits will be determined by the Chancery Court. Is that correct? It would be determined initially by the administrative court with the right to appeal to the Chancery Court and then the right to appeal to the Court of Appeals and then the Supreme Court has discretionary jurisdiction. So the administrative court does not get the last word on this. That's what's akin to a criminal proceeding? Your Honor, this case is, in important respects, more akin to a criminal prosecution than our most civil cases. That was the standard established in Huffman. Sprint took a little different attitude about this and wants to tighten up on the finding younger abstention frequently in these civil cases. But Sprint had very limited facts, Your Honor. I'm glad you asked that because Sprint had very limited facts. In Sprint, the Iowa Utilities Board, which was the federal defendant, was the forum for a dispute between two private parties, between Sprint Communications and Windstream Iowa Communications. And what the court in Sprint found was that because the federal defendant functioned as the forum in a dispute between two private parties, younger abstention did not apply. So I think Excalibur is trying to get a lot more mileage out of Sprint than it's actually worth. Can I ask one last question? Has there been any effort to settle this case? There have been. Settlement is under discussion. Okay. Thank you. And are you meeting with the circuit mediator or are you pursuing settlement in another arena? Informal proceedings. Or not proceedings, but just we're proceeding in the normal way of settlement, which is... Discussion between the parties. Right. We have an excellent circuit mediator who can facilitate those concerns and allow you the opportunity to have a hand in how this is resolved. I would suggest some benefit there. Thank you, Your Honor. On that subject, how much money are we talking about here? What are the parameters of the... The Pseudomax judgment is in the vicinity of $10 million as it has accrued over time. And I would just say to the Court, we made an effort to use the circuit mediator's office and without getting too much into things we probably shouldn't, the options given back to us were not much of a compromise. But be that as it may, let's go back and talk about... I heard Mr. Butler on a number of times say that this case... He used the words from the decisions. He said it's akin to a criminal prosecution in important respects. But I never heard any respects. I never actually heard how this case looks like a criminal proceeding in important respects. How it is like the examples that the United States Supreme Court gave from its decisions in the Sprint case, which was unanimous and relatively short. And I think what the U.S. Supreme Court really was doing there was saying to a number of the lower courts that this doctrine has been applied far more broadly in a far different way than it should have. And I would just say, the important quote there is from the Supreme Court, divorced from their quasi-criminal context, the three middle sex conditions would extend younger to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. That result is irreconcilable with our dominant instructions about abstention being the exception and not the rule. But at the same time, Mr. Butler is correct that the bottom line on Sprint was the court said these are two private parties and there isn't any basis on which to apply younger abstention. Your Honor, there were two private parties at issue there, but I contend Sprint to be much broader and much more of a change in the doctrine from the United States Supreme Court. To say, because they said, we today clarify and affirm that younger extends to these three exceptional circumstances identified in NOPSI and no further. Well, but then we've got some precedent of our own that you do the NOPSI factors and then you do the middle sex factors. Isn't that the case and the way it works? I would contend, Your Honor, that this court's precedents in that regard are largely, if not entirely, prior to Sprint. And respectfully, Your Honor, I would submit that the United States Supreme Court in Sprint said, and they said to guide other federal courts at the end of their decision, that the analysis that has been being applied is not consistent with our dominant instructions. Well, the only problem with that is if the bottom line is they're not going to do it in Sprint because the controversy is between two private parties, insofar as what else they said would apply broadly, it's an advisory opinion. It doesn't affect the two parties in Sprint. Isn't it advisory only? I mean, I think they were trying to send a message. I really do. And the message was, you all are getting involved in these two-party, two-private-party things and you shouldn't be involved in them. But to take that and apply it broadly is, I mean, I'm not sure that's what we are supposed to do. I'm out of time. May I respond, Your Honor? Of course. I would just say that as it relates to civil enforcement actions, that the Supreme Court in Sprint set forth a number of factors that are applicable in making that determination. And respectfully, none of those are present in the proceeding that Excalibur initiated here challenging executive action. Okay. Thank you. Thank you. Your parameters of settlement are the $10 million on the top side and then whatever you can agree on below that. Is that a settlement? That's what we would like them to be, Judge. Some of the other options we've been given are to go off the directory, which is not really an option at all. So how much would that cost you to go off the directory? We'd lose the right to do business in Tennessee. Any cigarettes? Any cigarettes. If you're not on the directory, you can't do business at all. And not only that, Your Honor, there are other states that if you get delisted in one, you get delisted in others. What are your sales in Tennessee, more or less, if that's possible? I think there are many millions of dollars, Judge, and so the effects would be catastrophic. And honestly, that relates to this agreed order. How many brands are you selling? I believe there are two, Judge, Echo and Edgefield. And Berkeley is the problem. Yeah, and we manufacture that in Oklahoma. That's not manufactured in Tennessee. It's not sold in Tennessee. There's never been an effort to do that, and that really underlines it. The action against you is because you are now the owner of that brand. That's correct. But we, again, would contend there are serious constitutional issues with what the state is trying to do here. And you still take the position that you have no forum to explore those constitutional issues in the Tennessee Chancery Court? Not fully and fairly, as the United States Supreme Court contemplates. If you get the discovery you want, would you not then be able to do it in the Tennessee Chancery Court? If we got that full and fair discovery that the ALJ and the Chancery Court have said we're not going to get, then maybe we would have that opportunity, but that's not where we are, Judge. But the Chancery Court said no because it wouldn't take up the issue. But it did say, Your Honor, the Chancery Court judge did say, I have looked at the ALJ's reasoned decision and believe it to be correct. She actually said that on the record and hand-wrote it on the order. So there was a merits-based analysis done by her. So then the basis of your claim from there would be that you would appeal that determination from the Chancery Court back to the Tennessee Court of Appeals and to the Tennessee Supreme Court if necessary? That's correct. And if that process is ongoing for many years, that's some of the issue of why we're not getting a full and fair opportunity to be heard right now, as we contend we should be under Supreme Court precedent. Thank you. Thank you, Your Honor. Thank you both for your arguments.